JOSEPH BIGEL, MILTON SHOENHOLZ AND MILTON M. LIEBER-
MAN, PLAINTIFFS-APPELLANTS, v. DIRECTOR OF THE DI-
VISION OF LOCAL GOVERNMENT SERVICES, THE DEPART-
MENT OF COMMUNITY AFFAIRS OF THE STATE OF NEW
JERSEY; TAX COLLECTOR OF THE BOROUGH OF RIVER
EDGE; AND BOROUGH OF RIVER EDGE, DEFENDANTS-RE-
SPONDENTS, AND RIVER EDGE TENANTS ASSOCIATION,
INTERVENOR.

Superior Court of New Jersey
Appellate Division

Argued February 26, 1980—Decided May 8, 1980.

Before Judges CRANE, MILMED and KING.

*Joseph Schoenholz* argued the cause for appellants.

*Harry Haushalter*, Deputy Attorney General, argued the cause for respondent Director, Division of Local Government Services (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

*Willaim C. Meehan* argued the cause for respondents Tax Collector of the Borough of River Edge and the Borough of River Edge (*Contant, Contant & Meehan*, attorneys).

*William Goldberg* attorney for intervenor River Edge Tenants Association, filed a brief on behalf of the Association.

PER CURIAM.

In an action commenced in the Chancery Division plaintiffs, owners of garden apartments in the Borough of River Edge (borough), sought (1) a determination that *N.J.A.C.* 5:30–16.5, promulgated by the Director of the Division of Local Government Services (Director) pursuant to the Tenants' Property Tax Rebate Act, *N.J.S.A.* 54:4–6.2 *et seq.*, does not require them to

rebate to their tenants any part of the unbudgeted state school aid payments which they received in 1977, and (2) an injunction staying, pending determination of the matter, the operation of *N.J.S.A.* 54:4–6.11 and *N.J.S.A.* 54:4–6.12, relating to the owner's liability to his tenants, and his liability for penalties, respectively, for failure to provide required property tax rebates. The trial judge granted the injunction sought "with respect to tenants' rebates in this matter until the further order" of the court, and required a deposit of the funds in dispute "in an interest-bearing account in the name of" the attorney for plaintiffs, as trustee, "to abide determination" of the matter. Following joinder of issue and entry of a pretrial order, defendant Director moved before the trial judge for (a) an order dismissing plaintiffs' complaint or transferring it to this court, or (b) "an order granting summary judgment that the regulation being contested is constitutional and applies to plaintiffs."

In a letter opinion the trial judge decided in favor of plaintiffs "[o]n the merits" and, on March 6, 1979, filed a judgment which provides that:

1. Under a true construction of the Tenants Property Tax Rebate Act, N.J.S.A. 54:4–6.2 et seq., the plaintiff landlords are not required to make tax rebate to the tenants of the landlords' properties located in the Township [sic] of River Edge in any amount for 1977.

2. This matter should be and hereby is ordered transferred to the Appellate Division to test the judgment herein, as an appeal placing the defendants in the position of appellants.

3. In the interim, the stay by consent order of this Court dated December 30, 1977 is continued subject to such determination as may be made in the Appellate Division.

This judge designated plaintiffs as the appellants and allowed the River Edge Tenants Association to intervene in the appeal.

At the outset we note that we find no sanction in the *Rules of Court* for the action of the trial judge in *transferring*

the matter to this court *after* he had already disposed of the single issue in the case. At this advanced stage of the proceeding we will nonetheless proceed to review the matter as if it had properly come before us.

In essence, plaintiffs' single contention before us is: that while River Edge has a rent control ordinance, the ordinance "has no provision" authorizing "any increase in taxes levied against a landlord [to] be passed on directly to the tenants"; that this leaves them in the same situation as landlords in a municipality having no rent control ordinance, and that, accordingly, they should be treated in the manner provided in *N.J.A.C.* 5:30–16.5(b) rather than in the manner provided in *N.J.A.C.* 5:30–16.5(a). We find no merit in the contention and reverse the trial judge's holding to the contrary. A similar issue was raised in *Central Towers Co. v. Fort Lee*, 160 *N.J.Super.* 223 (Law Div. 1978). In that case one of the plaintiffs, Central Towers Company t/a Northbridge Park, was the owner of a 14-story, high-rise apartment building in Fort Lee, a municipality having a rent control ordinance, and the other plaintiff, LeCross Associates, was the tenant of a long-term ground lease of another 14-story, high-rise apartment building in the municipality. These plaintiffs contended, among other things, that *N.J.S.A.* 54:4–6.3(b) "applied in conjunction with the local [Fort Lee] rent control regulations is unfair in that even should the unbudgeted school aid returned for each building be netted against the property tax increase, each building still suffers a net property tax increase, requiring the landlord to make up the deficit." The trial judge held, however, that since *N.J.S.A.* 54:4–6.4 "clearly mandates that an owner shall provide a property tax rebate to the tenants as provided for in the Tenants' Property Tax Rebate Act . . . the unbudgeted school aid rebate must be passed on to the tenants as per the formula set out in *N.J.S.A.* 54:4–6.3, as amended by section 1(b) of *L.*1977, *c.* 81." Judgment was entered dismissing the complaint of Central Towers and holding that LeCross Associates, as "a ground-les-

see," lacked standing to bring the action. By separate opinion filed today in A–4965–77, we affirmed that judgment substantially for the reasons expressed by Judge Cassidy in his opinion reported at 160 *N.J.Super.* 223. See 173 *N.J.Super.* 458 (App. Div.1980). Beyond this, and to achieve a more complete disposition of the principal issue in that case, we remanded the matter to the trial court for the entry, on appropriate notice to the parties as well as to City Partners L.A.C., the owner of the apartment complex of which LeCross Associates is lessee and operator, of an ancillary judgment directing that 65% of the unbudgeted state school aid payments for the 1977 tax year there involved be passed to the respective tenants entitled thereto in accordance with the provisions of *N.J.A.C.* 5:30–16.-5(a). The determination in that case is similarly applicable to the River Edge case now before us.

The Tenants' Property Tax Rebate Act states that "An owner of qualified real rental property shall provide a property tax rebate to the tenants thereof as provided in this act for each year in which he receives a property tax reduction." *N.J.S.A.* 54:4–6.4. As originally enacted in 1976, *L.*1976, *c.* 63, the term "property tax reduction" was defined in § 2b of the act, *N.J.S.A.* 54:4–6.3(b), as

> . . . the amount of property tax reduction to the property owner of the qualified real rental property attributable solely to the State aid received during a tax period from the State Aid for Schools Fund established in N.J.S. 54A:9–25 as computed in section 4 of this act.

A broadened definition of the term was included in the 1977 amendments to the act, *L.*1977, *c.* 81. As amended, the term "property tax reduction" was defined to mean

> . . . 0.65 times the difference between the amount of property tax paid or payable in any year on any qualified real rental property, exclusive of improvements not included in the assessment on the real property for the base year, and the amount of property tax paid in the base year, but such calculations for the property tax reduction shall exclude reductions resulting from judgments en-

tered by county boards of taxation, the Division of Tax Appeals in the Department of the Treasury, or by courts of competent jurisdiction. "Property tax reduction" shall also include 0.65 times any rebate or refund of school property taxes which may be provided pursuant to P.L.1976, c. 113. "Property tax reduction" shall not include any amount in excess of that which is identified herein. Any such amount shall be retained by the property owner. [*L.*1977, *c.* 81, § 1; *N.J.S.A.* 54:4–6.3(b)].

Acting pursuant to authority vested in him by the Tenants' Property Tax Rebate Act, the Director of the Division of Local Government Services adopted rules and regulations prescribing, among other things, "the procedures for computing property tax reductions and rebates in 1977 and thereafter," and obviously designed "for the efficient administration and implementation of the purposes and provisions of" the Act. *L.*1976, *c.* 63, § 9; *N.J.S.A.* 54:4–6.10. Thus, *N.J.A.C.* 5:30–16.5 provides:

(a) In municipalities, where ordinances regulate rent, the unbudgeted school aid refund shall not be netted as shown below, but rather individually calculated and applied to the tenant who will receive said rebate or credit.

(b) In municipalities where there are no rent control ordinances, tenant rebates or credits are applicable only when there is a reduction of property taxes as certified by the municipal tax collector.

1. Where the municipal tax collector certifies to the owner(s) a net increase of 1977 property taxes combined with any 1976 unbudgeted State school aid, as compared to the base year property tax as defined in this act, no tenant rebate or credit is applicable.

2. Where the municipal tax collector certifies to the owner(s) an amount of 1977 property taxes combined with any 1976 unbudgeted State school aid equal to the base year property tax as defined in this act, no tenant rebate or credit is applicable.

3. Where the municipal tax collector certifies to the owner(s) a net reduction of the 1977 property taxes combined with any 1976 unbudgeted State school aid, as compared to the base year property tax defined in this act, tenant rebate(s) or credit(s) are applicable provided the criteria stated in N.J.A.C. 5:30–16.7(b) are met.

i. The municipal tax collector's certification will be based upon the methodology employed in the following hypothetical table:

| Property Tax | | 1976 Unbudgeted State | Property |
| 1976 | 1977 | school aid | tax reduction |
| $100,000 | $90,000 | $10,000 | $20,000 |
| 100,000 | 92,000 | 10,000 | 18,000 |
| 100,000 | 100,000 | 10,000 | 10,000 |
| 100,000 | 90,000 | –0– | 10,000 |
| 100,000 | 102,000 | 10,000 | 8,000 |
| 100,000 | 120,000 | 10,000 | None* |
| 100,000 | 110.000 | 10,000 | None* |
| 100,000 | 110,000 | –0– | None* |

*In cases where the unbudgeted school aid is less than the property tax increase, 65 per cent of such funds must be credited against any rent increases that the tenant would pay due to the increase in property taxes.

■ Thus, in River Edge, a municipality having a rent levelling ordinance, the unbudgeted State school aid refund is not to be netted with the difference between 1976 and 1977 property taxes, but, rather, is to be "individually calculated and applied to the tenant who will receive said rebate or credit."

■ Plaintiffs, owners of "qualified real rental property" in River Edge, do not challenge the validity of any part of *N.J.A.C.* 5:30–16.5. Rather, the substance of their claim is: that subsection "(a)" is not applicable unless there is a tax passthrough provision in the local rent control ordinance; that the River Edge ordinance does not provide for a tax passthrough, and that therefore *N.J.A.C.* 5:30–16.5(a) does not apply to properties in River Edge. We find no merit in the contention. It is obvious that *N.J.A.C.* 5:30–16.5(a) does not, by its terms, require for its applicability that the local rent control ordinance contain a tax passthrough provision; but in any event the tax passthrough provisions of the River Edge rent levelling ordinance are clearly evident. Thus

    .  .  .  At the expiration of a lease of a periodic tenant, no landlord may request or receive a percentage increase in rent which is greater than four percent of the previous rent which was charged the tenant. [§ 13–2.1]

In cases of week to week, month to month or other tenancies at will, a landlord will be entitled to only one rental increase for a 12 month period. With respect to rental increases for such tenants, no landlord may request or receive a percentage increase in rent which is greater than four percent per annum, provided that the date of the last rental increase, or start of tenancy must be at least 12 months prior to the date of the intended increase. [§ 13–2.2]

Included in the four percent annual increase permitted under the provisions of 13–2.1 and 13–2.2, is an amount to cover any increase in municipal property taxes. Landlords are therefore, prohibited from seeking a tax surcharge from tenants based on any increase in municipal property taxes. [§ 13–3.1]

Beyond these provisions, the ordinance also provides for "hardship rent increases" in the following manner:

In the event that a landlord cannot meet his mortgage payments and maintenance costs, he may appeal to the rent leveling board for increased permissible rental. The board may grant the landlords a hardship rent increase to meet these payments, provided that the landlord has complied with the requirements of subsection 13–2.6 herein.[1] [§ 13–4.3a]

In light of these unambiguous provisions of the local ordinance we discern no sound basis for plaintiffs' suggestion that *N.J.A.C.* 5:30–16.5(a) is inapplicable to them. It clearly is applicable.

The March 6, 1979 judgment under review is reversed. The matter is remanded to the trial court for the entry of judgment dismissing plaintiffs' complaint and directing that 65% of the unbudgeted state school aid payments received by plaintiffs for the 1977 tax year be passed to the respective tenants entitled thereto, in accordance with the provisions of *N.J.A.C.* 5:30–16.-5(a). The stays heretofore granted in the trial court are dissolved. We do not retain jurisdiction.

---

[1]Regarding "required record submission."